IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| James Tinsley, | ) |
|                   Plaintiff, | ) Civil Action No. 2:16-cv-00996-HMH-MGB |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) **OF MAGISTRATE JUDGE** |
| South Carolina Department of Probation Parole and Pardon Services; Governor Nikki Haley; Larry Ray Patton, Jr.; David Baxter; Marvin Stevenson; Henry Eldridge; Thomas Hallam; and John Doe, | ) |
|                   Defendants. | ) |

The Plaintiff, proceeding *pro se*, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon the following motions: (a) Defendants' Motion to Dismiss (Dkt. No. 29); (b) Plaintiff's Motion for Summary Judgment (Dkt. No. 34); and (c) Defendants' Motion to Dismiss or Stay Plaintiff's Motion for Summary Judgment (or Alternatively, for an Extension of Time to Respond) (Dkt. No. 37).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The Plaintiff brought this action on or about March 28, 2016. (*See* Dkt. No. 1.) He first amended his Complaint on or about May 11, 2016 (Dkt. No. 8); he filed his Second Amended Complaint on or about June 24, 2016 (Dkt. No. 11). On January 17, 2017, Defendants filed a Motion to Dismiss. (Dkt. No. 29.) By order filed January 18, 2017, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 30.)

On or about February 3, 2017, Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss. (Dkt. No. 34; *see also* Dkt. No. 35.) Within that same filing, Plaintiff also filed a Motion for Summary Judgment. (Dkt. No. 34; *see also* Dkt. No. 35.) Defendants filed a Reply, as well as a Motion to Dismiss or Stay Plaintiff's Motion for Summary Judgment (or Alternatively, for an Extension of Time to Respond) (Dkt. No. 36; Dkt. No. 37).

## PLAINTIFF'S ALLEGATIONS

In the instant action, Plaintiff sues Nikki Haley, the South Carolina Department of Probation, Parole, and Pardon Services ("SCDPPPS"), and various individuals associated with the SCDPPPS (Defendants Larry Ray Patton, Jr.; David Baxter; Marvin Stevenson; Henry Eldridge; Thomas Hallam; and John Doe). (*See generally* Dkt. No. 11; *see also* Dkt. No. 11-1.) Plaintiff asserts this action is against SCDPPPS, "its agents[,] and the Governor of South Carolina for maintaining and utilizing false and expunged records against Plaintiff to a significant Constitutional degree." (Dkt. No. 11 at 1 of 9.) Plaintiff states that he is suing "[e]ach of the defendants . . . in their 'official' capacities for declaratory and injunctive relief and in their 'individual' capacities for monetary damages." (Dkt. No. 11 at 1 of 9.)

Plaintiff was denied parole twice; once on April 9, 2014, and again on May 27, 2015. (*See* Dkt. No. 11 at 4 of 9.) When he appeared for the third time, on May 25, 2016, he was granted parole and has since been released from the South Carolina Department of Corrections. (Dkt. No. 11 at 6-7 of 9.) Plaintiff asserts the Defendants violated his constitutional rights in knowingly using "false information" in reaching their determination to deny parole. (Dkt. No. 11 at 4-5 of 9.) Plaintiff is careful to explain that he is "not challenging the [D]efendants['] decision to deny parole, but rather, is only challenging the fairness of the decision process or fairness of the parole procedures which are allowing the [D]efendants to maintain and use false, outdated, or expunged records in violation of the Fourteenth Amendment." (Dkt. No. 11 at 6 of 9.) According to Plaintiff, he is "challenging the fairness of the parole procedures and use of false information which deprive[d] Plaintiff of a State Statutory Created

Right to be parole eligible that is sufficient to trigger a liberty interest protected by due process of law." (Dkt. No. 11 at 3 of 9.)

As to the April 9, 2014 denial, Plaintiff asserts that the "si[n]gle justification" provided for the denial was that Plaintiff "had failed to successfully complete a prior supervision program." (Dkt. No. 11 at 4 of 9.) Plaintiff further states,

> The board did not support their findings with any underlying facts as required by law and so it was unclear what the board relied upon for their belief that Plaintiff had failed to successfully complete a prior supervision program. This fact alone violated Plaintiff's rights because it resulted in a temporary denial of parole eligibility because the board did not follow appropriate criteria which requires them to explain the underlying facts supporting their decision sufficiently enough to allow for review.

(Dkt. No. 11 at 4 of 9.) Plaintiff alleges that he notified Defendants Patton, Baxter, Stevenson, Eldridge, and Hallam "that if they were relying upon [specified] convictions and revocation, that those had been reversed, dismissed[,] and expunged and should not be relied upon as justification for denying parole." (Dkt. No. 11 at 4 of 9.) He further alleges that, for a second time, he "provided the court orders, expungement orders[,] and recent criminal records from S.L.E.D. and requested that they expunge the false information and provide Plaintiff with a new hearing without the use of the false and expunged information." (Dkt. No. 11 at 4 of 9.) He asserts that Defendants "refused" to provide him with a new hearing. (Dkt. No. 11 at 4 of 9.)

According to Plaintiff, when he "went up for parole a second time" on May 27, 2015, "Defendant Patton or a John Doe working for Patton[] told the board that Plaintiff had 47 prior convictions." (Dkt. No. 11 at 4 of 9.) Plaintiff further alleges as follows:

> When the board heard that[,] they immediately voted to deny parole on the ground that Plaintiff's prior record indicates poor community adjustment. Again, Plaintiff notified the defendants and informed them that because all of the prior convictions had been overturned, dismissed and expunged, and because he had ultimately been found to have been innocent, he had no prior felony convictions that could indicate a poor community adjustment.

(Dkt. No. 11 at 4 of 9.) Plaintiff states,

> Plaintiff has appealed the parole boards [sic] use of the false information and two courts have ruled that the [D]efendants are in violation of Plaintiffs [sic] rights to have the

3

board adhere to statutory requirements, which are ment [sic] to result in a fair procedure. The Administrative Law Court found that by failing to provide the underlying facts to support the boards [sic] findings, they had failed to comply with statutory requirements and Plaintiff notes that this lack of specificity leaves the door open for arbitrary and capricious treatment. The South Carolina Court of Appeals found that if the board were using false information against Plaintiff, it would amount to a temporary denial of parole eligibility that would be sufficient to trigger a liberty interest and due process violation. Instead of immediately correcting the errors, the [D]efendants have been deliberately indifferent toward Plaintiffs [sic] rights and have been defiant by failing to follow the courts [sic] instructions. Instead, the [D]efendants have appealed the decisions and raised arguments that are largely irrelevant to the facts of this case.

(Dkt. No. 11 at 4-5 of 9.)

According to Plaintiff, when he appeared on May 25, 2016, and was granted parole, "the board did not consider the false and expunged information and because there never were any other justifications for denying Plaintiff parole," the board granted parole to Plaintiff. (Dkt. No. 11 at 7 of 9.) Plaintiff states,

> Th[e May 25, 2016] decision from the board is prima facie evidence that the information previously used against Plaintiff was false. Since the board could not identify any other grounds for denying parole, the boards [sic] decision is proof that Plaintiff would have been given parole two years earlier had the board not been relying upon false information.

(Dkt. No. 11 at 7 of 9.)

Plaintiff asserts Defendants' actions violated his "Constitutional Rights to due process and equal protection of the law." (Dkt. No. 11 at 6 of 9.) Plaintiff alleges the Defendant SCDPPPS "has a policy, custom[,] or practice of maintaining and utilizing false information against potential parolees," and "[a]t the time an inmate is being considered for parole, the board is not reviewing the files for possible errors, nor making corrections when given proof that the information is false, expunged[,] or no longer reliable." (Dkt. No. 11 at 6 of 9.) As to Defendant Haley, Plaintiff asserts she is "not being sued under a respondeat superior theory," but instead is being sued because her "refusal to correct this problem constitutes a tacit authorization or ratification of the parole boards [sic] use of false information and amounts to an official policy." (Dkt. No. 11 at 6 of 9.) Plaintiff alleges the Defendants were "deliberate[ly] indifferent" towards his constitutional rights and "willfully, maliciously, intentionally,

4

and continually violated Plaintiff's State-created due process right to be considered parole eligible and his right to equal protection of the law." (Dkt. No. 11 at 7 of 9.)

Plaintiff lists the following causes of action in his Second Amended Complaint: (a) a claim for retaliation, asserting Defendants' "actions towards Plaintiff are in retaliation for his previous suits against Probation and Parole agents"; (b) a claim asserting his "due process liberty interests in being parole eligible were denied him because the [D]efendants['] use of false information denied him a fair procedure for parole consideration"; and (c) a claim asserting his "rights to equal protection were denied him when false information was used against him." (Dkt. No. 11 at 7-8 of 9.) Plaintiff seeks, *inter alia*, a declaratory judgment, injunctive relief, compensatory damages, and punitive damages. (Dkt. No. 11 at 8 of 9.)

## **DISCUSSION**

As noted above, Defendants filed a Motion to Dismiss. (Dkt. No. 29). Plaintiff responded to that motion; he also filed a Motion for Summary Judgment. (Dkt. No. 34.) In response to Plaintiff's Motion for Summary Judgment, Defendants ask either (a) that his motion be dismissed, or (b) that they be allowed an extension of time to respond. (Dkt. No. 37.) The undersigned addresses the pending motions below.

Before turning to the motions, the undersigned first notes the case upon which Plaintiff's action appears to be based. In *Paine v. Baker*, 595 F.2d 197 (4th Cir. 1979), the Fourth Circuit addressed an inmate's claim that he had a "right . . . to have erroneous information expunged from his file." *Paine*, 595 F.2d at 199. The plaintiff therein asserted "that he had been denied parole because of his past criminal record and poor prison adjustment, and implied that information in his file must be false to support such a finding"; the plaintiff "contend[ed] that he has a cognizable due process right to have his correctional file free from allegedly incorrect prejudicial information." *Id*. at 201. The Fourth Circuit explained as follows:

> We hold today that in certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied on to a constitutionally significant degree. . . .

5

>    An inmate must first allege that particular information is contained in his file. It is, of course, difficult in the ordinary course of events for a prisoner who has never seen his file to know what information is contained therein. But experience teaches that in many instances prisoners do gain such knowledge, and a requirement of particularity is necessary to discourage fishing expeditions through files. It is not sufficient that the inmate allege that "something must be wrong;" nor may he simply set out the true facts and demand assurances that the information in the file comports with those facts.
>
>    Second, the inmate must affirmatively plead that the information in his file is false. It is not sufficient that the information is true but the inmate nonetheless deems it prejudicial. Similarly, it is not sufficient that the inmate disputes evaluations and opinions regarding him. . . . The federal courts will not oversee the discretionary decisions of prison administrators and second-guess their evaluations. Our concern is where the administrators rely on information which is false.
>
>    Third, the inmate must allege that the information is relied on to a constitutionally significant degree. We do not require that an inmate wait until an adverse decision has been rendered, but think that under certain circumstances he could allege that the false information is such that prison officials are likely to rely on it.
>
>    The requirement of reliance to a constitutionally significant degree has two dimensions. The first is the nature of the adverse administrative decision made on the basis of erroneous information. If the information is relied on to deny parole or statutory good-time credits, or to revoke probation or parole, the inmate's conditional liberty interest is at stake and the due process clause is called into play.

*Paine*, 595 F.2d at 201-02 (citations omitted).[1]

Having reviewed the case upon which Plaintiff appears to rely in bringing the instant claim, the undersigned turns to the individual motions.

---

[1] In *Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997), the Fifth Circuit stated, "[A]lthough *Paine* has not been expressly overruled, subsequent Fourth Circuit cases reflecting this Circuit's view certainly undercut any contention that the *Paine* analysis is still viable in the circuit which initially formulated it." *Johnson*, 110 F.3d at 308 n.13 (citing *Hill v. Jackson*, 64 F.3d 163 (4th Cir. 1995)). However, in *Gilmore v. Bloom*, Civ. A. No. 2:08-cv-326, 2008 WL 5272576 (S.D.W. Va. Dec. 17, 2008), the United States District Court for the Southern District of West Virginia indicated that it was less than clear whether *Paine* "has been effectively overruled." *Gilmore*, 2008 WL 5272576, at *6 ("The *Hill* case arose in Virginia, where the parole statute does *not* establish a liberty interest. Accordingly, the undersigned will apply *Paine* because West Virginia's parole statute *does* establish a liberty interest, as held in *Tasker v. Mohn*, 165 W.Va. 55, 267 S.E.2d 183 (W.Va.1980)." (emphasis in original)). In South Carolina, "[i]f a Parole Board deviates from or renders its decision without consideration of the appropriate criteria, . . . it essentially abrogates an inmate's right to parole eligibility and, thus, infringes on a state-created liberty interest." *Cooper v. S.C. Dep't of Prob., Parole & Pardon Servs.*, 377 S.C. 489, 499, 661 S.E.2d 106, 111 (2008); *see id*. at 499, 661 S.E.2d at 112 ("We find the apparent failure by the Parole Board to consider the requisite statutory criteria in rendering its decision constitutes an infringement of a state-created liberty interest and, thus, warrants minimal due process procedures."). Because South Carolina's parole statute does involve a liberty interest, it appears that *Paine* applies.

**A.     Defendants' Motion to Dismiss (Dkt. No. 29)**

**1. Official-Capacity Claims**

In their Motion to Dismiss, Defendants first assert that they "are entitled to dismissal on the basis of Eleventh Amendment Immunity of all claims asserted against them in their official capacities." (Dkt. No. 29-1 at 1 of 10.) They also assert that they are entitled to dismissal of all Plaintiff's official-capacity claims against them because they "were agents or employees of an arm of the State of South Carolina when acting in their official capacities and, therefore, they are not 'persons' within the meaning of 42 U.S.C. § 1983." (Dkt. No. 29-1 at 3-4 of 10.)

The Eleventh Amendment provides: "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State or by citizens or subjects of any foreign state." In enacting 42 U.S.C. § 1983, Congress did not intend to override the doctrine of States' sovereign immunity found in the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 67 (1989). As the Supreme Court stated in *Will*,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

*Will*, 491 U.S. at 66 (citation omitted).[2]

In the case *sub judice*, Plaintiff does not seek monetary damages against any Defendant in his or her official capacity. (*See generally* Dkt. No. 11.) Instead, Plaintiff states that he is suing "[e]ach of the defendants . . . in their 'official' capacities for declaratory and injunctive relief." (Dkt. No. 11 at 1 of 9.)

---

[2]While sovereign immunity does not bar suit where a state has given consent to be sued, or where Congress abrogates the sovereign immunity of a state, neither of those exceptions apply in the instant case. Congress has not abrogated the states' sovereign immunity under § 1983, *see Quern v. Jordan*, 440 U.S. 332 (1979), and South Carolina has not consented to suit in federal district court. *See* S.C. CODE ANN. § 15-78-20(e).

In the opinion of the undersigned, analysis of Defendants' Eleventh Amendment argument hinges on the doctrine of *Ex Parte Young*. The *Ex Parte Young* doctrine "allows private citizens, in proper cases, to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute." *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon, Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

Plaintiff states that he seeks injunctive relief requiring the "remov[al of] all false information including all false historical claims from Plaintiff's files" and abstention from "any future use or dissemination of the false information." (Dkt. No. 11 at 8 of 9.) Such a request seeks prospective relief. However, Plaintiff has not alleged an *ongoing* constitutional violation. In *Tinsley v. South Carolina Department of Probation, Parole & Pardon Services*, No. 2016-UP-163, 2016 WL 1367046 (S.C. Ct. App. Apr. 6, 2016), the South Carolina Court of Appeals remanded Plaintiff's case to the Administrative Law Court for an evidentiary hearing "to determine if the Parole Board [was] using false information to deny [Plaintiff] parole." *Tinsley*, 2016 WL 1367046, at *1. Citing *Cooper v. South Carolina Department of Probation, Parole & Pardon Services*, 377 S.C. 489, 661 S.E.2d 106 (2008), the South Carolina Court of Appeals noted that while "'[p]arole is a privilege, not a right,'" "'[i]f a Parole Board deviates from or renders its decision without consideration of the appropriate criteria, we believe it essentially abrogates an inmate's right to parole eligibility and, thus, infringes on a state-created liberty interest.'" *Tinsley*, 2016 WL 1367046, at *1 (quoting *Cooper*, 377 S.C. at 496, 499, 661 S.E.2d at 110, 111).

Although Plaintiff's case is not identical to *Jemsek v. Rhyne*, 662 F. App'x 206 (4th Cir. 2016), the undersigned finds that case instructive in assessing whether Plaintiff has alleged an ongoing constitutional violation. In *Jemsek*, a physician brought an action against, *inter alia*, former and current members of the North Carolina Medical Board in their official capacities, "alleging that a conflict of

interest infected Board disciplinary proceedings that sanctioned [the plaintiff], thereby violating his Fourteenth Amendment right to procedural due process." *Jemsek*, 662 F. App'x at 207. The plaintiff "sought declaratory relief under 28 U.S.C. § 2201 that the 2006 order and 2008 letter were unconstitutional and an injunction under 42 U.S.C. § 1983 rescinding them." *Id*. at 209. In the 2006 order at issue, the Board suspended the plaintiff's medical license for one year but stayed the suspension provided certain criteria were satisfied. *Id*. at 208. In 2008, the Board launched another investigation into the plaintiff, and during this investigation, the Board issued a public letter of concern that June. *Id*. The district court dismissed the suit, finding, *inter alia*, that the "Eleventh Amendment . . . barred [the plaintiff's] claims because [he] alleged past violations of his due process rights and did not seek prospective relief." *Id*. at 209.

On appeal, the Fourth Circuit concluded the district court "correctly concluded that [the plaintiff's] claims do not fit within the *Ex parte Young* exception to the Eleventh Amendment." *Id*. at 210. The Fourth Circuit stated,

> [The plaintiff] argues that because the 2006 order and 2008 letter remain on the record, there is an ongoing violation such that a declaratory judgment voiding those documents, and an injunction rescinding them, would qualify as prospective relief. This contention fails under our established precedent.
>
> In [*Republic of Paraguay v. Allen*, 134 F.3d 622 (4th Cir. 1998)], this court held that the Eleventh Amendment barred a claim based on a treaty violation because the plaintiff, the Republic of Paraguay, sought, through an injunction and declaratory judgment, "the voiding of a final state conviction and sentence" for one of its citizens. 134 F.3d at 628. Paraguay complained that state officials violated federal law by failing to inform a Paraguayan citizen convicted of a capital offense of his consular rights under a treaty and to notify Paraguayan officials of that person's arrest, conviction, and sentence. We found that even though Paraguay couched its request for relief in terms of a declaratory judgment and injunction, this "d[id] not alter the inescapable fact that its effect would be to undo accomplished state action." *Id*. The same is true here.
>
> [The plaintiff] asserts that the continued existence and "publication" of the 2006 order and 2008 letter amount to an ongoing constitutional violation. *See* Appellant's Br. at 23, 25. But the 2006 order would only have suspended his license for one year, even if the Board had not immediately stayed it. Meanwhile, the 2008 letter was a one-time reprimand, and [the plaintiff] voluntarily allowed his medical license to become inactive. That these disciplinary actions may have continuing consequences (although, as we note below, [the plaintiff] fails to concretely identify them) is unfortunate from

> his perspective. But, like the conviction at issue in *Paraguay*, even though the consequences of any past violation may persist, invoking those effects does not transform past state action into an ongoing violation. Rather, it is an attempt "to avoid the obvious fact that the actual violation alleged is a past event that is not itself continuing." 134 F.3d at 628.

*Jemsek*, 662 F. App'x at 211.

Much like the plaintiff in *Jemsek*, the violation Plaintiff alleges in the case *sub judice* is a past event–that the Defendants relied on false information in previously denying him parole–that is not itself continuing. Plaintiff has been granted parole. (*See* Dkt. No. 11 at 7 of 9.) Because he has been granted parole, there is no continuing infringement of his "right to parole eligibility." *See Tinsley*, 2016 WL 1367046, at *1. Simply put, there is no continuing violation to abate. In his Motion for Summary Judgment, Plaintiff asserts that Defendant SCDPPPS "has still not removed the false information and continue[s] to use the false information against Plaintiff." (Dkt. No. 34-1 at 2 of 11.) Plaintiff states (verbatim),

> For example, the Trial judge sentenced Both Plaintiff and his co-defendant jointly and severally and Plaintiff's co-defendant has already paid half of the restitution. Nevertheless, the DPPPS's is still trying to extort the full amount out of Plaintiff. Even though the DPPPS has been provided with the trial transcript and is fully aware that the sentence was jointly and severally, they continue to threaten Plaintiff with citations or taking him before a judge for a parole revocation if the full amount is not paid by Plaintiff.

(Dkt. No. 34-1 at 2 of 11.)

Plaintiff's complaint with the computation of his restitution has little to do with the crux of his Second Amended Complaint, which concerns parole and the alleged use of false information in denying him parole. (*See generally* Dkt. No. 11.) Moreover, Plaintiff has not alleged that his sentence did not include restitution, so what Plaintiff complains of in his motion is not the "false and expunged" information Defendants allegedly relied on in denying him parole. Given that the alleged violation of Plaintiff's constitutional rights was the reliance on false information in denying parole to Plaintiff, and that Plaintiff has now been granted parole, there is no continuing violation to abate. *See Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998) ("[U]nder the *Ex parte Young* exception, which is based upon the recognized fiction that the officials' conduct is not that of the state, 'a federal court,

consistent with the Eleventh Amendment, may enjoin state officials to conform their *future* conduct to the requirements of federal law.'" (quoting *Quern v. Jordan*, 440 U.S. 332, 337 (1979)) (emphasis added)); *cf. Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255-56 (2011) ("There is no doubt VOPA's suit satisfies that straightforward inquiry. It alleges that respondents' refusal to produce the requested medical records violates federal law; and it seeks an injunction requiring the production of the records, which would ***prospectively abate*** the alleged violation." (emphasis added)). Accordingly, the undersigned recommends concluding the Defendants have Eleventh Amendment immunity on all claims asserted against them in their official capacities.[3]

### 2. Individual-Capacity Claims
### a. Defendants Patton, Baxter, Stevenson, Eldridge, Hallam, and Doe

Defendants Patton, Baxter, Stevenson, Eldridge, Hallam, and Doe assert that, as to the claims against them in their individual capacities, they are entitled to "absolute quasi-judicial immunity." (Dkt. No. 29-1 at 4-5 of 10.) Defendants contend that, "[l]ike judges, parole board members require the insulation of absolute immunity to ensure the courageous exercise of their discretionary duties." (Dkt. No. 29-1 at 4 of 10.)

The undersigned agrees with Defendants and therefore recommends the dismissal of Plaintiff's individual-capacity claims against Defendants Patton, Baxter, Stevenson, Eldridge, Hallam, and Doe. According to Plaintiff, Defendant Patton is the "Director of Parole Board Services," and Defendant Baxter is a "parole board member." (Dkt. No. 11-1 at 3 of 13.) From a reading of Plaintiff's Second Amended Complaint, it appears that Defendants Stevenson, Eldridge,

---

[3]Defendants also argue that they are entitled to dismissal of the claims against them in their official capacities because "all of the Defendants were agents or employees of an arm of the State of South Carolina when acting in their official capacities and, therefore, they are not 'persons' within the meaning of 42 U.S.C. § 1983." (Dkt. No. 29-1 at 3-4 of 10.) Defendants cite to *Will v. Michigan Department of State Police*, 491 U.S. 58 (1991), for support that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71. The undersigned is not persuaded by Defendants' argument. Plaintiff aptly cites to Footnote 10 of that same decision, wherein the Court states, "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10 (internal quotation marks and citations omitted).

Hallam, and Doe were also on the parole board during the relevant time periods. (*See* Dkt. No. 11 at 3-4 of 9.)

Plaintiff states in his Second Amended Complaint that, with respect to his individual-capacity claims against Defendants, he seeks monetary damages from Defendants. (Dkt. No. 11 at 1 of 9.) Plaintiff is not entitled to monetary damages against Defendants Baxter, Stevenson, Eldridge, Hallam, and Doe, however, because these defendants "are immune from suits for damages under 42 U.S.C. § 1983" because they "perform a quasi-judicial function." *Franklin v. Shields*, 569 F.2d 784, 798 (4th Cir. 1977) (citing *Pope v. Chew*, 521 F.2d 400, 405 (4th Cir. 1975)); *Pope*, 521 F.2d at 405 ("Pope cannot recover damages. Parole Board members have been held to perform a quasi-judicial function in considering applications for parole and thus to be immune from damages in § 1983 actions."); *Cheatham v. Muse*, 617 F. App'x 252, 254 (4th Cir. 2015) ("Members of the Parole Board, who perform a quasi-judicial function, are immune from suits for damages." (citation omitted)).[4]

Plaintiff contends that Defendant Patton is not entitled to immunity because he "is not a board member and did not participate in any judicial function." (Dkt. No. 34-1 at 6 of 11.) According to Plaintiff, "[Patton] is the investigator for the parole board and is statutorily required to conduct an investigation of inmates [sic] files and ensure that the board is provided accurate information with which to consider when determining parole." (Dkt. No. 34-1 at 6 of 11.) The undersigned disagrees with Plaintiff and recommends concluding Defendant Patton is immune from damages in a § 1983 action. In *Pope v. Chew*, the Fourth Circuit cited *Burkes v. Callion*, 433 F.2d 318 (9th Cir. 1970),

---

[4]Plaintiff asserts that in the case *sub judice*, Defendants "should not be given absolute immunity for their refusal to keep accurate records because such acts do not constitute 'determining parole' but rather amount to an unfair procedure or parole process." (Dkt. No. 34-1 at 7 of 11.) The undersigned disagrees with Plaintiff. The decision of whether to grant parole involves a great deal of discretion, and Defendants are entitled to quasi-judicial immunity for the entire process of evaluating whether parole should be granted. *See McCray v. Maryland*, 456 F.2d 1, 3 (4th Cir. 1972) ("The immunity of 'quasi-judicial' officers such as prosecuting attorneys and parole board members derives, not from their formal association with the judicial process, but from the fact that they exercise a discretion similar to that exercised by judges. Like judges, they require the insulation of absolute immunity to assure the courageous exercise of their discretionary duties."); *see also Silver v. Dickson*, 403 F.2d 642, 643 (9th Cir. 1968) (cited with approval in *McCray*, 456 F.2d at 3 n.3) ("In our opinion the members of the California Adult Authority and other state officials are, while employed in the processing of applications for parole, performing quasi-judicial functions. They therefore have immunity from suits for damages under the Civil Rights Act, just as do other public employees engaged in the performance of quasi-judicial duties.").

with approval, indicating that probation officers have immunity in submitting probation reports. *See Pope*, 521 F.2d at 405-06 (*citing Burkes*, 433 F.2d at 319). In *Burkes*, the Ninth Circuit stated, "A probation officer preparing and submitting a probation report in a criminal case is performing a 'quasi-judicial' function and is entitled to a similar, if not the same, immunity that is accorded to judges for acts done by them in the exercise of their judicial functions." *Burkes*, 433 F.2d at 319 (citations omitted). Even taking Plaintiff's allegations that Patton was an investigator for the parole board as true, Patton has immunity in making reports to the parole board. *See Pope*, 521 F.2d at 405-06; *Burkes*, 433 F.2d at 319. The undersigned therefore recommends dismissing Plaintiff's individual-capacity claims against Defendants Patton, Baxter, Stevenson, Eldridge, Hallam, and Doe.

### b. Defendant Haley

Defendant Haley contends she is entitled to dismissal of the individual-capacity claims against her "pursuant to *Shaw v. Stroud* and *Ashcroft v. Iqbal*." (Dkt. No. 29-1 at 5 of 10.) Haley states, *inter alia*, "Regarding her individual capacity, Governor Haley had no personal involvement in Plaintiff's parole hearings or Plaintiff's case in general, and Plaintiff has not made any allegation in his complaint that the Governor had any personal involvement." (Dkt. No. 29-1 at 5 of 10.) Haley contends the "only allegations made against [her] are for supervisory liability," and Plaintiff's allegations do not satisfy the "knowledge requirement" of supervisory liability. (Dkt. No. 29-1 at 5-6 of 10.) She further asserts that Plaintiff "failed to articulate any facts establishing a causal link between the alleged inaction of Governor Haley and the specific constitutional injury allegedly suffered by Plaintiff." (Dkt. No. 29-1 at 7 of 10.)[5]

The doctrines of vicarious liability and *respondeat superior* are generally not applicable in § 1983 actions. *Vinnedge v. Gibbs*, 550 F.2d 926, 927-29 (4th Cir. 1977); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) (holding "that a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable

---

[5]Pursuant to South Carolina Code § 24-21-10, the Governor appoints the director of the Department of Probation, Parole and Pardon Services "with the advice and consent of the Senate." S.C. CODE ANN. § 24-21-10(A). Similarly, vacancies on the Board of Probation, Parole and Pardon Services "must be filled by gubernatorial appointment with the advice and consent of the Senate for the unexpired term." S.C. CODE ANN. § 24-21-10(B).

under § 1983 on a *respondeat superior* theory"). However, "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). In such a case, liability "is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.* (citations omitted).

The Fourth Circuit has set forth three elements "necessary to establish supervisory liability under § 1983":

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). To satisfy the first element, a plaintiff must show the following: "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.* (citing *Slakan*, 737 F.2d at 373). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* (citing *Slakan*, 737 F.2d at 373-74).

The undersigned recommends dismissing Plaintiff's individual-capacity claims against Defendant Haley. The undersigned concludes that, even accepting Plaintiff's allegations as true, Plaintiff's attempt to hold Haley responsible pursuant to supervisory liability fails. *Shaw v. Stroud*, 13 F.3d 791, is instructive as to what conduct poses a pervasive and unreasonable risk of constitutional injury to a plaintiff. The *Shaw* case involved a § 1983 claim "against a North Carolina state trooper and several of his supervisors by the wife and minor children of a citizen the trooper shot and killed during an arrest." *Shaw*, 13 F.3d at 793-94. The Fourth Circuit concluded the plaintiffs had presented

evidence of each element required to establish supervisory liability on the part of Sergeant Stroud, who supervised Officer Morris. *Id*. at 799-800.

The evidence at issue in *Shaw* is much different from the allegations Plaintiff makes against Defendant Haley. The record in *Shaw* contained evidence that in May of 1987, Morris allegedly beat an arrestee named Walker; when Walker told Stroud he wanted to discuss the way Morris had treated him, "Stroud responded, 'Oh, what happened, he roughed you up?'" *Id*. at 795. Also in May of 1987, an arrestee named Menser reported Morris for assault, though "an investigation cleared Morris of the charges." *Id*. In March of 1988, Morris allegedly assaulted an arrestee named James; according to James, he saw Stroud when Morris took him to jail, and "Stroud commented to Morris, 'You got another one.'" *Id*. James asserted that Stroud and Morris laughed, and Stroud "refused to listen . . . when [James] tried to tell Stroud that Morris had beaten him." *Id*. In July of 1988, Ms. Cothran called the State Highway Patrol Internal Affairs Department to "report that Morris [and another trooper] . . . had assaulted her son." *Id*. "From September 1987 to December 1988, during Stroud's tenure, six of the nine charges of assault on a law enforcement officer in [the county] . . . were brought by Morris. There were forty-six charges for resisting arrest, twenty of which were initiated by Morris." *Id*. at 795-96.

In affirming the district court's denial of Stroud's motion for summary judgment, the Fourth Circuit stated, *inter alia*,

> Stroud argues that the plaintiffs have failed to establish each element required for supervisory liability on his part. Stroud first contends that the plaintiffs have not shown that Stroud knew of conduct by Morris which posed a pervasive and unreasonable risk of harm to citizens like Bowen. We disagree. As discussed more fully below, Stroud had knowledge of at least three incidents in which Morris used excessive force which posed an unreasonable risk of harm to arrestees.
> Next, Stroud argues that he exhibited no deliberate indifference. The plaintiffs, however, have presented more than an isolated incident suggesting Stroud's deliberate indifference to or implicit authorization of Morris' abusive conduct. Three separate witnesses have alleged that, when they notified Stroud of assaults by Morris, he responded callously and with apparent amusement. For instance, Stroud never bothered to return Harvey Paul Walker's phone calls although he knew that Morris had possibly "roughed up" Walker. In addition, Stroud just "sort of smiled" at Gary Ward when Ward reported Morris' violent conduct to Stroud. Besides laughing when Morris escorted Jessie James to the jail, Stroud refused to listen to James when he tried to

15

report that Morris had beaten him. Finally, the statistical evidence speaks for itself: during Stroud's tenure as First Sergeant of Troop B–V (two line sergeants and twenty troopers), Morris instituted twenty-six of the fifty-five charges of assault on a law enforcement officer and resisting/delaying/obstructing an officer. Under these circumstances, Stroud's inaction raises genuine issues of material fact as to whether he was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.

*Shaw*, 13 F.3d at 799-800 (internal quotation marks and citation omitted).

In the case *sub judice*, Plaintiff alleges–at best–that on two occasions, he mailed a letter to Defendant Haley complaining that the Parole Board denied him parole "based on either false or expunged information," and Haley did nothing. (*See* Dkt. No. 34-2 at 34 of 42.) Allegations that one individual–Plaintiff himself–complained on two separate occasions in a letter to the then-Governor of South Carolina that one person was denied parole "based on either false or expunged information" do not, in the opinion of the undersigned, rise to the level of a "pervasive and unreasonable risk of constitutional injury." *See Shaw*, 13 F.3d at 799 ("Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." (citing *Slakan v. Porter*, 737 F.2d 368, 373-74 (4th Cir. 1984))); *Slakan*, 737 F.2d at 373 (noting the plaintiff in a supervisory liability case "assumes a heavy burden of proof" and "[o]rdinarily . . . cannot satisfy his burden of proof by pointing to a single incident or isolated incidents" (citations omitted)). Accordingly, the undersigned recommends concluding Defendant Haley is entitled to dismissal of the individual-capacity claims against her.[6]

---

[6]Haley also argues she is entitled to qualified immunity. (*See* Dkt. No. 29-1 at 7-8 of 10.) The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009).

The undersigned recommends concluding Haley is entitled to qualified immunity. Even if Plaintiff's allegations are sufficient to give rise to supervisory liability as to Haley, Haley is entitled to qualified immunity because it would not have been clear to her that failing to act upon Plaintiff's two letters was unlawful.

Additionally, a conclusion that members of the parole board are entitled to quasi-judicial immunity for the entire

### 3. State Law Claims

Defendants assert that "[t]o the extent any state law claims are being brought, they should be dismissed and/or remanded." (Dkt. No. 29-1 at 8 of 10.) Plaintiff has not brought any claims pursuant to the law of South Carolina. (*See generally* Dkt. No. 11.) Accordingly, Defendants' argument is not addressed.

### B. Plaintiff's Motion for Summary Judgment (Dkt. No. 34) and Defendants' Motion to Dismiss or Stay Plaintiff's Motion for Summary Judgment (or Alternatively, for an Extension of Time to Respond (Dkt. No. 37)

In addition to opposing Defendants' Motion to Dismiss, Plaintiff filed a Motion for Summary Judgment. (Dkt. No. 34.) Therein, he "contends that the Defendants [sic] dispositive motion admits that there are no material facts in dispute and that the only issues remaining are questions of law for the court." (Dkt. No. 34.)

Contrary to Plaintiff's assertions, Defendants have not admitted that there are no material facts in dispute. Defendants have not filed an Answer to Plaintiff's Second Amended Complaint; instead they filed a Motion to Dismiss. (*See* Dkt. No. 29). Such motion was proper pursuant to the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 12(b). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). However, the fact that Defendants filed a Motion to Dismiss does not mean that the Defendants admit Plaintiff's allegations as true. *See Grant v. Bryant*, Civ. A. No. 0:07-278-GRA-BM, 2007 WL 2302581, at *1 (D.S.C. Aug. 9, 2007) ("Defendants filed a Motion to Dismiss under Rule 12. Thus, the Court must

---

process of evaluating whether parole should be granted–but not the then-Governor of South Carolina, for that same decision and process–makes little sense. *Cf. Miller v. Davis*, 521 F.3d 1142, 1145 (9th Cir. 2008) (stating, in concluding the Governor was entitled to quasi-judicial immunity for his reversal of the parole board's decisions granting parole to Miller, "We hold that the Governor's review of parole decisions regarding prisoners convicted of murder pursuant to Article V, § 8(b) of the California Constitution is 'functionally comparable' to a judge's role and is therefore entitled to absolute immunity from damages liability.").

assume that the allegations contained in the Complaint are true and determine whether, if true, these allegations constitute a legally cognizable claim for relief. This does not mean that Defendants are deemed to have admitted the allegations in the Complaint by virtue of filing a Motion to Dismiss.").

For the reasons set forth herein, the undersigned recommends dismissal of the instant action. Given that dismissal is warranted, the undersigned recommends (a) denying Plaintiff's Motion for Summary Judgment (Dkt. No. 34) and (b) dismissing as moot Defendants' Motion to Dismiss or Stay Plaintiff's Motion for Summary Judgment (or Alternatively, for an Extension of Time to Respond (Dkt. No. 37).

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Defendants' Motion to Dismiss (Dkt. No. 29) be GRANTED. It is further recommended that Plaintiff's Motion for Summary Judgment (Dkt. No. 34) be DENIED, and that Defendants' Motion to Dismiss or Stay Plaintiff's Motion for Summary Judgment (or Alternatively, for an Extension of Time to Respond) (Dkt. No. 37) be DISMISSED as moot.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

May 16, 2017
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).